# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ANDREW DAVISON and CAPE COD BIOFUELS, INC.,

       Plaintiffs,

v.

TOWN OF SANDWICH, JASON VIVEIROS, THOMAS CORRIVEAU, GEORGE RUSSELL, and GEORGE H. DUNHAM,

       Defendants.

Civil Action No. 15-cv-11889-FDS

## MEMORANDUM AND ORDER ON NON-PARTY UNION'S MOTION TO QUASH SUBPOENA FOR THE PRODUCTION OF DOCUMENTS
### (Dkt. No. 58)

CABELL, U.S.M.J.

       Plaintiff Andrew Davison (Davison or the plaintiff) was terminated from his position as a Sandwich, MA firefighter and brought suit against several entities, including Jason Viveiros (Viveiros), who was then a fellow firefighter and president of the Sandwich Professional Fire Fighters Association, IAFF Local 2196 (the Union). As part of discovery, Viveiros has subpoenaed the Union, a non-party, to produce documents reflecting communications between Viveiros and the Union's lawyer concerning the plaintiff. The Union moved to quash the subpoena on the ground that the documents are protected by the attorney-client privilege. (Dkt. No. 58). Viveiros opposed the motion and moved to have the Court review the documents *in camera*. Viveiros alternatively requested through his opposition that the Court exclude at trial any evidence concerning his acts or omissions as union president. (Dkt. Nos. 62 and 63). The Court allowed the motion for an *in camera* review and thereafter held a hearing including the plaintiff, the

defendants and the Union.  After consideration of the court filings, the submitted documents, and the arguments advanced at the hearing, the Court concludes that the communications are not protected by the attorney-client privilege.  The Union's motion to quash is therefore denied and Viveiros' alternative request to exclude evidence, premature in any event, is moot and need not be considered.

## I.      RELEVANT BACKGROUND

Davison was at all relevant times a Sandwich firefighter and part owner of a company called Cape Cod BioFuels, Inc. (CC BioFuels).  When Davison sustained an injury while working as a firefighter, he took a medical leave of absence from the firefighter position but continued to work at CC BioFuels, performing light tasks.  Around the same time, the town was considering a proposal to build a public safety complex which would house police, fire, and other town operations.  The proposal enjoyed the support of some within the fire department but Davison opposed it, and he showed it by among other things erecting a large sign in his yard condemning it.

The plaintiff alleges that supervisors within the fire department took issue with his conduct and pressured him to remove the sign, by telling him that he was violating state law by working at CC BioFuels while out on medical leave.  When the plaintiff refused, his superiors ordered him in writing to stop working.  The plaintiff alleges that it was common for firefighters to work elsewhere while out on leave and he met with department officials to discuss the matter further.  Shortly thereafter, however, the plaintiff's medical leave ended and he returned to work as a firefighter.  Upon his return, and where there was no longer a basis to order him to stop working at CC BioFuels, the plaintiff was issued a written reprimand.  According to the complaint, and relevant to the motion to quash, the plaintiff alleges that:

> Defendant Viveiros advised Mr. Davison that he could <u>not</u> appeal or
> grieve such reprimand because there was no adverse action being
> taken against him. Defendant Viveiros falsely stated that he had
> checked with the Union's lawyer on this. That was not true; he never
> checked with the Union's lawyer but rather he simply did not want
> Mr. Davison to have the union appeal or grieve this reprimand.

Compl., at ¶ 35.  To rebut this allegation, Viveiros seeks to obtain documents from the Union

which would show that he in fact did consult with the Union's lawyer.  Notably, no one appears

to dispute that there are indeed documents bearing on the purported consultation, or that Viveiros

simultaneously shared his written inquiry to counsel with the plaintiff.  In fact, Viveiros is already

in possession of the documents he seeks to obtain from the Union, including an e-mail dated

August 17, 2012 from Viveiros to Union Counsel, Howard Lenow, and a copy of a bill dated

September 3, 2012 for services rendered by Mr. Lenow to the Union.  Viveiros nonetheless sought

the Union's permission to formally use the documents in this case because he was acting in his

capacity as president of the Union when he consulted counsel, and assumes that the documents

thus reflect attorney-client communications which are protected by the attorney-client privilege.

The Union appears to share this view as well and has declined to waive the privilege.

## II.   DISCUSSION

As the entity asserting the privilege, the Union bears the burden of showing that "(1) the

communications were received from a client during the course of the client's search for legal

advice from the attorney in his or her capacity as such; (2) the communications were made in

confidence; and (3) the privilege as to these communications has not been waived." *Comm'r of

Revenue v. Comcast Corp.*, 453 Mass. 293, 304 (2009).  In order for a communication to be made

in confidence, it must be made "with the expectation that the communication will not be divulged."

*Id*. at 305.

With respect to the email, there are no markings or notations on it to evince that it was

being sent in confidence.  On the contrary, there is no dispute that Viveiros blind copied the plaintiff when he emailed the communication to the Union's counsel, and there is no evidence that Viveiros ever instructed the plaintiff that the e-mail must be kept confidential as a privileged communication.  *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (communications between employees and in house counsel deemed privileged where the chairman of the board gave explicit instructions that the communications at issue were highly confidential).  Consequently, Viveiros, as president of the Union, knew when he communicated with counsel, and shared the same communications with Davison, that Davison could have, had he so wished, shared the communication with anyone else, without restriction.  As such, there is no basis to conclude that Viveiros communicated with counsel with an expectation that the communication would remain confidential.  Accordingly, the Union has not met its burden of demonstrating that Viveiros sent this e-mail with the expectation that it not be divulged.  It follows that the email is not a privileged communication and therefore is not protected from disclosure by the attorney-client privilege.  For that reason, it is not necessary to reach the issue of whether the privilege was waived.

The Court also concludes that counsel's bill is not protected from disclosure by the attorney-client privilege.  "As a general proposition, billing records are just … records of amounts being billed to a particular client for services rendered and, presumably, a description of those services, the identity of those who rendered them and the time they each spent in doing so, and the actual costs incurred." *McCarthy v. Slade Associates, Inc.*, 463 Mass. 181, 197-98 (2012).  To the extent a particular description of services "might contain substantive references to privileged attorney-client communications" these entries may be redacted as privileged. *Id*. at 98.  However, where a description of services merely notes "the general nature of the services performed … this

type of information is not privileged." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992).

The Court is satisfied here that the bill at issue does not contain any substantive references to communications between counsel and Viveiros or other Union representatives.  Rather, the description of services rendered generally references the nature of the work performed and nothing in it reveals or hints at what counsel and Viveiros may have discussed or what advice or opinion may have been rendered.  Moreover, one entry on the bill suggests that whatever communications did take place between counsel and Viveiros were also shared with Davison.  For that reason, and because all other parts of the bill involving the time spent and amount billed are "stuff of fact, not opinion" the Court is satisfied that the document is not privileged.  *McCarthy*, 463 Mass. at 198.

## III.   ORDER

For the foregoing reasons the Union's motion to quash the subpoena is DENIED (Dkt. No. 58).


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  April 8, 2016

5